I think the easiest way to characterize this case is to begin with whether the district court was correct in stating that an arbitrator cannot confirm upon himself the jurisdiction to retain jurisdiction over an arbitration board, because that really follows the rest of the case. And there's nothing in the record that indicates where he got that power, except he did write in his decision that he would retain jurisdiction. But we know there was nothing in the contract that prohibited it. We know the employer put on no evidence to the district court that somehow it was foreclosed by an agreement of the parties or by some other method. We do know the employer didn't object. But most important for the purposes of this case, we know that it is commonplace for arbitrators in many circumstances, if not all, to retain jurisdiction over the enforcement or application or interpretation of their decisions. And this Court has approved that practice in numerous cases. Other courts have done it. And it's not unusual, in fact, as occurred in this case, for an arbitrator to issue a decision towards the end of a contract or even the beginning of a contract period and have the dispute linger long after the contract expires so that the arbitrator will then be asked to resolve a dispute arising out of that agreement even long after the contract has expired. Sometimes arbitrators impose limits on their own retention, a time limit or other limits. This arbitrator did impose some limits, saying it was solely limited to disputes arising out of the agreement. And for that reason, this is consistent practice. So although the Court may be correct that the arbitrator imposed that on the parties without the agreement of the parties, we don't know, that certainly was within his power to make that decision. Mr. Rosenfeld? Is it Field or Feld? Feld. Okay. Wasn't the purpose of the interest arbitration to resolve a dispute concerning what language would be included in the successor agreement? Yes. Okay. So you agree this was an interest arbitration? Yes. All right. I guess I'm trying to understand your argument, then, how the arbitration you're seeking now bears any relationship to what language would be and, in fact, was included in the successor agreement that has since expired. Well, there are a couple of questions within Your Honor's question. As the arbitrator noted, as to the one section where the dispute arose, it was a very complicated wave section. And he may well have thought or the parties may well have conferred the power to say, look, Mr. Arbitrator, you're resolving the meaning of these provisions. We know you're very familiar with them because we've had days and days of hearing about this. So if a dispute arises for more than just a ministerial question, did you put the exact language in the contract, we're going to let you resolve that. Now, we don't know what happened, but that certainly flows from an interest arbitration decision that that arbitrator may well be asked to resolve limited disputes arising out of his decision. Why isn't Article 9 of that agreement make it a grievance arbitration as opposed to an interest arbitration? Well, that's a question of how you interpret Article 9 vis-à-vis the old Article 29 vis-à-vis what the arbitrator did. Your Honor, I think on remand to the arbitrator, the company may well make that argument, that this is governed by Article 9 or 29. But that's a matter for the arbitrator to figure out. That's for the arbitrator to decide which provision of the contract really governs. Was it untimely? And the arbitrator, when faced with the issue before him, may say, wait a minute, folks. I never thought that this language extended that far. Or he may say, no, this is exactly what I intended, to resolve this dispute over how the wage provision was implemented. And I thought this was the case. Could the arbitrator also say, I didn't intend to reserve this discretion to determine the meaning of the contract? Is that a decision that he might make as an arbitrator as opposed to the decision the Court might make to that same effect? Exactly, Your Honor. That wasn't exactly. It was a question. No, I agree. Your Honor, the company has an argument here, a legitimate argument. It's not ridiculous to argue that that was what he intended. But it's not for the Court to decide it. I thought this issue was settled in interstate distributors, Your Honor. I thought this was settled in Bay Area Sealers. I thought this was settled in California Trucking Association. But how would the arbitrator still have jurisdiction at this point? I guess I'm having a little trouble understanding that, because it looks like by the language of Article 29, his ability to rule on anything expired when Article 29 was no longer in force. And it's no longer ‑‑ it was no longer in force, and there was no negotiations going on or anything like that prior to it going ‑‑ it being expired. So I'm trying to understand how does he have jurisdiction over this to even decide whether he has the ability. He retained jurisdiction without objection from the employer. And my guess is what happened here, that both parties saw that he retained jurisdiction, didn't care at that point, and the union's use of that retention, I think, is pushing the envelope. But nonetheless, he retained jurisdiction. As I've indicated, arbitrators often retain jurisdiction without limit, and that retention flows long after the contract. Go back to Enterprise Wheeling Car. But aren't we supposed to look at the language here? I mean, you say oftentimes others do, but, I mean, isn't that because of what the language says in the original agreement? I mean, Article 29 expressly states that it shall remain in full force in effect until such time as a successor agreement is ratified and executed. And the parties executed a successor agreement. So I'm trying to understand how your argument works, because I think it seems like we're supposed to adhere to the plain language of Article 29, which, if we are, appears to say that it is no longer, it no longer had any effect once the parties executed the successor agreement. Can you help me with that? Your Honor, that's a question for the arbitrator to resolve. And that is, was his jurisdiction limited once the parties inked the agreement? Because he expressly retained jurisdiction to both make sure that that task was accomplished, but also to make sure that it was implemented, because what he said was, I mean, what was clearly implied from this is that although it may be put on paper, one part of the other party may not implement what he ordered. And he therefore retained jurisdiction only over those sections over which he had ruled on, and it was a very limited assertion of jurisdiction. The language that he wrote in his decision was, for the sole and limited purpose of resolving any disputes that may arise between the parties regarding the interpretation or application of the award. And I understand that Article 29. During the application of the award. He didn't say that. I thought that's what you just said right now. No. No, regarding the interpretation or application of any portion of the award. He put no time limit on it, and that makes sense, because most times. And so it would go on in infinity? I mean, what's the end date? There is no end date. I understand that. And that's normally true of many arbitrators' retentions of jurisdiction. I mean, Van Waters and Roger and other cases. So you could – I'm sorry to interrupt you, but you could have two successor agreements after that, and that arbitrator in that would still have the ability – you'd still have the ability to go to him after two other successor agreements or four other successor agreements or 100 successor agreements. Yes, and the Supreme Court has answered that by saying that's a laches defense. That's a timeliness defense. The Court below said that that's a mootness issue. These are procedural issues. And the arbitrator is the one who is required under Flair Builders to resolve a laches. McKesson has another case. This Court has decided that every procedural issue, every procedural defense, is one that should be presented to the arbitrator. And I would agree that the employer has a laches defense here. They've got a timeliness defense. But they're all for the arbitrator to resolve. Why isn't the retention of jurisdiction limited to the interest arbitration as opposed to a grievance arbitration? Because it seems like the parties submitted to the arbitrator. He adopted seven or nine of the unions and two of the hospitals. And then this is a dispute about Article 13, which is the wages. That's a different issue, isn't that? And the arbitrator has a grievance. And why would he have retained jurisdiction over a grievance as opposed to the interest award? Your Honor, that was one of the articles that the parties fought about. It happened to be the one decision they fought most about was whether to accept the union's proposal on Article 13 or the employer's proposal. And if you look at the record, the arbitrator went on and wrote about four or five pages in his decision explaining what he thought the employer's proposal meant and why he adopted it. So he was plainly far more familiar with the meaning of those words than one of the other arbitrators nominated in the contract. And so although it was we don't know much about the dispute. We just know it's a matter of dispute about how Article 13 was applied. And the union's position was they didn't implement it correctly based upon what the arbitrator ruled they should do. They signed the document. They didn't implement it. That was the dispute. The difficulty I have is I don't think I'd have much difficulty deciding this question if we were to decide it. The question is who gets to decide it. And therefore, the question really is what's the jurisdiction of the arbitrator. Let's assume that his retention of jurisdiction is valid. The question of what does that mean, and, you know, you mentioned a number of cases that you think resolved this. I think Granite Rock is a case that we have to consider. Do you agree with that? Yes, and Granite Rock does. Well, I have a little trouble understanding Granite Rock because it seems to me it's somewhat inconsistent. But I think there's a part of Granite Rock that talks about whether it's ambiguous. And if you assume that this is not so absolutely clear but it's ambiguous, I have a little trouble with what Granite Rock tells you. I think you both think it helps you. And I think the parts that you think each think help you are somewhat in conflict with other things that it says. But Judge Malloy asked whether all he retained jurisdiction over is to determine what his award said rather than what the effect is of the clause that he agreed should be put in the contract. If you had a dispute, did he really say that the wages clause should be in the new contract, that would be fairly clear that he retained jurisdiction to decide what his award meant. But is it clear that he did not do what Judge Malloy is talking about, retain jurisdiction to interpret the clause that he said should be in the contract? I mean, certainly you agree that that's a fairly decent argument that the employer has. Yes. But the question is, is it clear that that's what his – if his retention of jurisdiction were clear, that he only retained jurisdiction to say what he ordered put in the contract, you would agree that the union does not have a case for the arbitrator interpreting the wages clause? Yes. And so your argument is that it's not clear whether his retention of jurisdiction is limited to that. Yes. And – If I conclude with – because I'd like to reserve a little time for rebuttal. Oh, yeah. You wanted to say four minutes. Well, we'll give you three. Let me just respond to Grant Roth. The Court was very careful to parse the language of the arbitration language. And that was not a question of contract termination. Had it been, I don't think that case would have been before the Court. It was a question of contract formation. And in that case, the Supreme Court said that because the language of the arbitration procedure used the words arise under, arise under the contract, the question of formation was not arbitrable. Here, you don't have that limitation. You have purpose of resolving any disputes that may arise between the parties. It's much broader, as this Court made plain in interstate. And for that reason, the language is broad enough to encompass all the questions that Your Honors have posed to me, and they're all legitimate questions which the company may raise to the arbitrator as why he should deny the union's request. All right. We'll give you three minutes. Thank you. Thank you, Your Honors. Ted Scott for Centinella Hospital, the employer here. And I would like to note that my client, Mary Schottmiller, is also in the courtroom today. The one thing that I think should be emphasized, and it's a statement out of the district court's decision, but I believe that the union's argument is focusing on the wrong instrument here. What the focus should be on is Article 29. That is the source of the arbitration agreement. That's the language that should be evaluated by this Court in determining whether the employer and the union agreed to submit a particular dispute to Arbitrator Collins. And they did. They submitted to Arbitrator Collins, here's the union's proposals on one end, here is proposals on the other end. Are you challenging the Arbitrator Collins reservation of jurisdiction, or are you using this for an interpretation of what Arbitrator Collins did? The arbitrator has the authority under Article 29 to retain jurisdiction for the purpose of seeing that his award is carried out. But the only authority and the only dispute that was properly before Arbitrator Collins was which contract language would go into the successor collective bargaining agreement. The parties never agreed to allow Arbitrator Collins to determine subsequent disputes over how that language was actually applied during the term of the following collective bargaining agreement or has been pointed out by the Court over the term of successive collective bargaining agreements. And I think what's important here is there were nine different contract provisions that the parties had disputes over, including management rights, subcontracting, benefits, and wages. These are the guts of any type of collective bargaining agreement. Under the union's argument, the employer is now required to have to agree or to submit to arbitration before Arbitrator Collins any disputes relating to whether an employee was properly paid a wage, whether another dispute is a violation of the subcontracting language that was chosen. That those disputes are to be arbitrated under Article 9. I think that's good. I don't think anyone would disagree that that's a, I don't want to say. It's a very strong argument, let's say. The question is, is that an argument that should be resolved by the Court or the arbitrator? The, if, is that, are you arguing about what Section 4 of Arbitrator Collins' decision means, or are we saying that he doesn't have the authority to decide what he decided in Section 4? And if, as I suspect, well, I'll let you answer that one first. Frankly, Your Honor, I'm confused by the reference to Section 4. Well, Section 4 of Arbitrator, the last page of Arbitrator Collins' award where he says. Oh, the retention jurisdiction. Yes. Okay. An arbitrator can retain jurisdiction to make sure that his award is complied with, provided that the parties have allowed that or have granted the arbitrator that type of authority. And I think that it's a fair argument that Article 29 granted Arbitrator Collins the authority and the power to make sure that whatever contract language he chose ended up in the successor collective bargaining agreement. But the parties never granted Arbitrator Collins the authority to subsequently determine disputes over how that language, the language in those nine different articles was applied during the term of the collective bargaining agreement. And is that a question of interpreting the language of what the contract, what did they grant him, what authority did they grant him? This is a matter of determining whether the parties agreed to arbitrate that dispute. What's the language that you're relying on to make that argument? In Article 29? Yes. Well, I, you know, have it somewhere here. But essentially, to paraphrase, the Article 29 allowed the arbitrator to choose either the employer's proposals or the union's proposals. That was his authority. That was all of the authority that was given to him. It really helps when you're deciding what you gave him to know what language you're relying on. I think it's quoted in my brief here. And this is Article 29, and it's in the record at page 108. Yes. I have it here in front of us. And it says, The parties further agree that they will make a good-faith effort to reach a successor agreement. And if they are unable to do so, any unresolved matters, that is the contract language, will be submitted to arbitrator Collins. And it also goes on to say that the request to actually arbitrate those issues will not be valid unless accompanied by a written statement that's setting forth the contract wording which is sought by that party. And then either the facility's position or the union's position shall be accepted as part of the successor agreement. And that is the contract language. That's the language I'm relying on. Well, you know, it's not so clear to me, at least, what it is that the court has been saying, and I think it's been not entirely consistent through all these cases, as to what the court should do and what the arbitrator should do. For instance, I think what your opponent said about the procedural issues is fairly clear, that the arbitrator decides the procedural questions. But I can't even tell from granite rock what the Supreme Court thinks the court should do and what they think the arbitrator should do. They say, for instance, you know, that it's the court's duty to interpret the agreement and determine whether the party's intended to arbitrate grievances concerning a particular matter. They then discharge this duty by applying the presumption of arbitrability only where there's a validly formed and enforceable arbitration. It's ambiguous about whether it covers an interpreting. They then discharge this duty by, one, applying the presumption of arbitrability only where a validly formed and enforceable agreement is ambiguous about whether it covers the dispute at hand, and adhering to the presumption and ordering arbitration only where the presumption is not rebutted. But what does that mean about the ambiguity of the contract? Well, I think that granite rock also includes a footnote that I think is very instructive with respect to this point, and that's footnote 8 of the decision, where the court talks about not reading the language from, for example, warrior and gulf in isolation as establishing a presumption that labor disputes are arbitrable or that everything goes to the arbitrator. I think what granite rock stands for, and certainly what AT&T stands for, is that it is for the court to determine whether or not the parties agreed that that dispute was subject to arbitration. And in granite rock, in fact, the court emphasizes the words, that dispute. Here, the dispute has to do with the wage rate paid to new hires. That dispute was never submitted to Arbitrator Collins. What was submitted to Arbitrator Collins and what the parties agreed to submit to Arbitrator Collins was what kind of – whether Article 9 that appeared in the next collective bargaining agreement would be the employer's proposal on Article 9 or the union's proposal on Article 9. End of story. Kennedy. Could we go back to one of Judge Merguia's questions? And if I understand Judge King's decision, this has to do with when does the agreement – how long does it go on? I think his grounds for deciding the case were that as of December 31st of 2009, the collective bargaining agreement expired, and alternatively that the issue was moot because the 2007 collective bargaining agreement expired. Is he wrong on that? Well, he's absolutely correct on that. Our position is you don't even get there. You mean if they – no, let's just stick with the answer to the question. Do you mean that if there were a discharge dispute that had occurred prior to the end of the contract that couldn't be arbitrated following the end of the contract? It absolutely could. It could. Yes. So it expires in a certain sense, but the effect of the arbitration clause continues beyond the expiration. Well, I don't think that's a good argument.  I think it's a good argument for matters that arise during the term of the contract. Term of the contract. But here I don't mean to argue with the Court, but you've got to go back to what we are looking at here in this dispute. What the union asked for is to arbitrate before arbitrator Collins, pursuant to the Article 29. No, no. I don't think we're questioning that. We're questioning whether Judge King was right when he said a dispute over what happened during the term of the contract is moot when the contract ends. Not all disputes. And I don't think that Judge King's opinion says that. And certainly I think that's what Litton was all about, is that not all the – there are some disputes that survive, but it is incumbent upon the party asserting that arbitration still exists for a dispute post-expiration to come forward with the evidence that satisfies the Litton test. And we contend the union did not do that in this case. So if the union had grieved under Article 9, then it would have been something that would have been subject to arbitration, but maybe not necessarily in front of arbitrator Collins? Definitely not in front of arbitrator Collins, although he could have been chosen by the parties because he was one of the designated arbitrators. What I will say is that the union's best argument is that had they invoked the grievance procedure in Article 9, they might have been able to compel arbitration with respect to disputes over what new hires were paid during the term of the 2007 agreement. But here, the request came six months after that agreement had expired. And while we don't know whether the union was complaining about the wages that were paid to a new hire during the 30 days prior to making that demand to arbitrator Collins or were complaining about the rates that were paid to new hires during the term of the agreement, what's important is the union foreclosed that by not availing itself of the grievance procedure that was available to it in the 2007 agreement. Well, this is a little skimpy on the record about some of the things. But as I recall, and I haven't checked this, but as I recall, a contract continues also until notice to some government agency, I don't remember which, that you have to not only give notice of termination, but don't you have to notify some agency that the contract is going to be terminated? There are stipulated facts here that the contract was terminated. And those are in the excerpts of record. No. Excuse me. But if the contract terminates, its terms and conditions go forward until there's a new contract. Isn't that right? Not as it relates to arbitration and not as it relates to all terms and conditions. And that's what Litton was all about. Because Litton said that while terms and conditions can continue under the National Labor Relations Act, that does not mean the contractual terms or the rights of the parties that were dependent upon the contract continue beyond the expiration date. Thank you. Thank you. Mr. Scott is correct that Litton deals with the question of arbitration and whether it continues after a contract has expired, and there is no issue about whether the 8D notice that Your Honor is referring to was given here. I think counsel has conceded this case by saying that this dispute would have been arbitrable certainly under Article 9 as long as it was limited to the issue of what new hires, and that's the dispute, what new hires were paid up until the contract expired. If it's arbitrable under Article 9, why is it not arbitrable? Put it differently. Why is it arbitrable simply because it's arbitrable under Article 9? Because arbitrator Collins reserved jurisdiction or retained jurisdiction over that same dispute. Well, that's the question as far as I'm concerned. Why is it that when he says I retained jurisdiction to determine what was, what should have been put into the contract, that he also retains jurisdiction to say what does the contract mean? I agree that isn't clear, but if you apply the presumptions to the language which counsel read you from the record of 108, if the Board of Inquiry report is rejected, which is a preliminary step, in whole or in part, any unresolved matters will be subject to final and binding interest arbitration. That's all it says. And then it gives a procedure. What are you reading from? It's page 108 of the record. No, no. What document? That's the 2003 to 2006 agreement that provided for interest arbitration. Is that Article 29? It's Article 29. All right. Where in Article 29 are you reading from? It's in the first paragraph towards the end. Any unresolved matters will be subject to final and binding interest arbitration before R. Douglas Tollins or somebody else person to the procedures and the timeframe agreed to in Article 28. It goes on to say that any unresolved matters as to what should go into the contract. Correct. Okay. But counsel's right that there was a procedure where both parties were to present their positions. He was going to adopt one or the other and retain the jurisdiction thereafter. Return the jurisdiction to do what thereafter? Well, I can just repeat his phrase. After issuing his decision, he retained jurisdiction solely limited to the purpose of resolving any disputes that may arise between the parties, between the parties. Any disputes between the parties. Now, what are you reading from there? I'm reading from his decision, Section 4. Four. His retention language. That's what Your Honor referred to. And it's extremely important. Regarding the interpretation or application of any portion of this award, now, does that mean the interpretation or application of an award that selects among various proposals on certain articles? And that clearly would mean that if the employer said he picked Article 9 and you said our version and you said, no, he picked our version, he would retain jurisdiction to determine what the wording of the contract should be. That's clear, isn't it? That's clear. Now, what in there makes you think that he should retain jurisdiction to interpret the language of what's in the award? Because he retained jurisdiction with that express language that says to resolve any disputes that may arise between the parties regarding the interpretation or application of the award. He didn't say of the contract. He said of the award. And I think counsel, if I may conclude, was very clear in saying that he agrees that the arbitrator could retain jurisdiction. He doesn't dispute that. In fact, twice he said in questions this panel asked, the arbitrator could retain jurisdiction. The question, then, is the scope of that retention, the language is there, and all these questions which he has raised, which I again will concede are valid arguments, they're fair arguments, that every one of them is for the arbitrator, not the Court. Thank you, counsel. Thank you. The case just argued will be submitted.
judges: Molloy, Reinhardt, Murguia